1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

| | | |
|---|---|---|
| 12 SEAN ANDERSON, | ) | Civil No. 06cv0216 J (BLM) |
| 13          Plaintiff, | ) | **ORDER:** |
|    v. | ) | |
| 14 | ) | **(1) ADOPTING REPORT &** |
| JOANNE B. BARNHART, | ) | **RECOMMENDATION;** |
| 15 | ) | |
|          Defendant. | ) | **(2) DENYING DEFENDANT'S** |
| 16 | ) | **CROSS-MOTION FOR SUMMARY** |
| | ) | **JUDGMENT [DOC. NO. 14];** |
| 17 | ) | |
| | ) | **(3) GRANTING PLAINTIFF'S** |
| 18 | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT [DOC. NO. 11]** |
| 19 | ) | |
| | ) | **(4) REMANDING THE CASE FOR** |
| 20 | ) | **FURTHER PROCEEDINGS** |

21
22          Before the Court is Plaintiff Sean Anderson's ("Plaintiff") Motion for Summary

23 Judgment and Defendant Commissioner of Social Security JoAnne B. Barnhart's ("Defendant")

24 Cross-Motion for Summary Judgment. [Doc. Nos. 12, 14.] Magistrate Judge Barbara L. Major

25 has filed a Report and Recommendation ("R&R") recommending that Plaintiff's Motion be

26 granted and Defendant's Cross-Motion be denied. [Doc. No. 24.] For the reasons set forth

27 below, the Court **ADOPTS** the R&R, **GRANTS** Plaintiff's Motion for Summary Judgment, and

28 **DENIES** Defendant's Cross-Motion for Summary Judgment.

1

### *Procedural History*

On August 28, 2003, Plaintiff filed an application for disability benefits and supplemental security income.  (R&R at 2.)  He alleged that he had been disabled due to post traumatic stress disorder ("PTSD"), anxiety disorder, and food addiction since November 26, 2002.  (*Id.*)  The application was denied initially and upon reconsideration, resulting in Plaintiff's request for an administrative hearing.  (*Id.*)  On June 22, 2005, a hearing was held before Administrative Law Judge ("ALJ") Edward Steinman.  (*Id.*)  By written decision dated August 6, 2005, the ALJ found that Plaintiff was not disabled because he could perform his past relevant work.  (*Id.*)  Plaintiff requested administrative review.  (*Id.*)  On December 2, 2005, the Appeals Council found no basis for disturbing the ALJ's ruling, and the decision became final.  (*Id.*)

On January 30, 2006, Plaintiff filed the instant action seeking review by the Court. [Doc. No. 1] On May 17, 2006, Plaintiff filed a Motion for Summary Judgment. [Doc. No. 11] Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion. [Doc. Nos. 14, 16.] On November 17, 2006, Magistrate Judge Major issued the R&R. [Doc. No. 24.] To date, neither party has filed objections to the R&R.  The Court incorporates by reference the factual background set forth in the R&R.

### *Factual Background*

Plaintiff has a high school education, has completed about four years of collegiate study, and states that he is a member of MENSA.  (R&R at 3.)  Before the onset of his alleged disability, Plaintiff held several jobs, including cashier, taxi driver, mail handler, sailor in the U.S. Navy, truck driver, custodian, mechanic, phone operator, cook, and school bus driver.  (*Id.*)  All of these positions were held for relatively short durations from 1989 to August 2003.  (*Id.*)  Plaintiff reported being fired from many of these positions.  (*Id.*)

At the request of the California Department of Rehabilitation, Dr. Mounir Soliman, a diplomat of the American Board of Psychology and Neurology, examined Plaintiff and issued a report dated March 3, 2003.  (AR at 172-76.)  Upon completing his examination, Dr. Soliman diagnosed Plaintiff as suffering from PTSD, borderline personality disorder, and having a history of substance abuse (in remission).  (R&R at 5.)  He assigned a Global Assessment of

1   Functioning ("GAF") score of "about 60."[1]  (*Id.*)  As to whether Plaintiff could adapt to work

2   situations, Dr. Soliman opined that "the patient is able to understand, carry out, and remember

3   simple and complex instructions.  The patient is able to interact with coworkers, supervisors, and

4   the general public.  The patient is able to withstand the stress and pressures associated with an

5   eight-hour workday, and day-to-day activities."  *Id.*

6          A Mental Health Services evaluator assessed Plaintiff on June 5, 2003.  (*Id.* at 6.)  The

7   evaluator diagnosed PTSD, alcohol dependence in remission, and a GAF score of 35.  The only

8   treatment note offered by the evaluator was that Plaintiff "would benefit from coping skills

9   training."  (*Id.*)

10         From July 2003 to at least May 2005, Dr. Donna Mills was Plaintiff's primary treating

11  physician at County Mental Health.  (*Id.* at 7.)  On June 8, 2005, Dr. Mills completed a

12  psychiatric review form based on her weekly contact with Plaintiff since June 2003.  (*Id.*)  She

13  diagnosed him with PTSD and assigned a GAF score of 35.  (*Id.*)  She reported that Plaintiff had

14  been in individual therapy but had shown minimal progress.  (*Id.*)  After administering a written

15  psychiatric inventory, she found Plaintiff in the clinical range in "masculinity/femininity,

16  paranoia, and schizophrenia."  (*Id.*)  Dr. Mills anticipated that Plaintiff's impairments or

17  treatment would cause him to miss work more than three times a month, and she opined that he

18  would have difficulty working at a regular job on a sustained basis.  (*Id.*)  She noted that

19  "[c]lient has attempted to sustain work with no success.  His symptoms restrict ability to

20  perform, obtain, and maintain employ[ment]."  (*Id.*)  She further noted marked limitations in

21  Plaintiff's functional ability to engage in the activities of daily living, to maintain social

22  functioning, and to maintain concentration, persistence, or pace, though she reported only one or

23  two episodes of decompensation.  (*Id.*)  In her concluding remarks, Dr. Mills stated that "Client

24  has odd beliefs that are inconsistent with cultural norms, as well as unusual perceptual

25  experiences, including bodily illusions.  He demonstrates suspiciousness and paranoid idea with

26  inappropriate affect.  Deficit in interrelational function."  (*Id.* at 8.)

27  ──────────────

28         [1] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults.  *See* Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).

06cv0216 J (BLM)

1    On October 30, 2003, Dr. Richard Hicks, a board-certified psychologist, examined

2    Plaintiff and performed a comprehensive psychiatric evaluation.  (*Id.* at 9.)  The examination

3    was performed for the Disability Determination Service Division of the California Department

4    of Social Services.  (AR at 187.)  Dr. Hicks diagnosed Plaintiff as having alcohol abuse in

5    remission, a mild adjustment disorder, a mild personality disorder, and a GAF score of about 75

6    or 80.  (R&R at 9.)  He opined that Plaintiff could perform simple and repetitive tasks, as well as

7    detailed and complex tasks, but would have trouble taking simple instructions from supervisors.

8    (*Id.*)  He explained that "[Patient] does irritate people.  He just does not take instructions well.

9    His interactions with coworkers and the public would be limited by his being a perfectionist.

10   His consistency and regularity would be OK."  (*Id.* at 9-10.)

11   On November 17, 2003, Dr. Herbert Hurwitz, a nonexamining consultant for the

12   Disability Determination Service Division, provided an assessment of Plaintiff based on his

13   review of Plaintiff's medical records from November 2002 to November 2003.  (AR at 194-96,

14   215.)  Dr. Hurwitz concluded that Plaintiff's abilities to (1) carry out detailed instructions, (2)

15   maintain attention and concentration for extended periods, (3) make simple work-related

16   decisions, (4) interact appropriately with the general public, and (5) set realistic goals or make

17   plans independently of others were "moderately limited."  (R&R at 10.)  Dr. Hurwitz opined that

18   the limitations on Plaintiff's social functioning and ability to maintain concentration, persistence,

19   or pace were only moderate, though he reported one or two episodes of decompensation.  (*Id.*)

20   Otherwise, he did not find Plaintiff's work-related abilities to be significantly limited.  (*Id.*)  He

21   concluded that Plaintiff could perform simple, repetitive work tasks for a normal workday and

22   workweek, could relate in an appropriate and socially effective manner with coworkers and

23   supervisors but not the general public, and could adapt appropriately to a variety of work

24   situations.  (*Id.*)  On March 22, 2004, Dr. Ed O'Malley, who is also a nonexamining consultant

25   for the Disability Determination Service Division, reviewed the assessment and affirmed Dr.

26   Hurwitz's conclusions.  (AR at 212, 215.)

27   On September 23, 2003, Plaintiff's friend James Nichols completed a form issued by the

28   Social Security Administration titled "Function Report Adult–Third Party."  (*Id.* at 11.)  He

indicated that he had known Plaintiff for two years and spent six to eight hours per week with Plaintiff.  (*Id.*)  Section C of the form required Mr. Nichols to circle items affected by Plaintiff's impairment.  (*Id.*)  Mr. Nichols circled "completing tasks," "concentration," "following instructions," and "getting along with others."  (*Id.*)  The form also required Mr. Nichols to explain how Plaintiff's impairment affected each of the items circled.  In response, Mr. Nichols wrote:

> (1) Following instructions–takes them as a personal threat–will do something different (2) Completing tasks–become (sic) easily distracted & forgets about what he was doing (3) Concentration–has a short attention span–usually has his own ideas about things (4) Getting along [] with others–is easily hurt by others–feels that other people have wronged him–don't care or have deceived him–has trouble listening to other people's point of view–thinks everyone else is crazy but himself.

(*Id.*)  To the question, "Has he/she ever been fired or laid off from a job because of problems getting along with other people," Mr. Nichols replied "yes" and wrote, "[h]e told me about various jobs he had & it usually evolves (sic) around him telling them how the job should be done."  (*Id.*)  In response to the question, "How well does the disabled person handle stress," Mr. Nichols wrote, "[t]his is one of his biggest problems–if he feels any type of pressure–he becomes fearful–disorient[ed]–trouble taking care of himself–unreasonable ideas & demands on others–to the point of not making sense."  (*Id.*)

An administrative hearing was held June 22, 2005.  (*Id.* at 12.)  The ALJ heard testimony from Plaintiff, medical expert Dr. Bolter, and vocational expert ("VE") Bonnie Sinclair.  (*Id.*) Plaintiff testified that although he had held a number of jobs, he was unable to sustain work and was often fired after a short period of time.  (*Id.*)  When the ALJ asked Plaintiff why he thought he was unable to sustain work, Plaintiff repeatedly gave extended explanations that veered off topic.  (*Id.*)  He testified that while medication helped him become cognizant of how angry and frustrated he gets, his interpersonal relationships had not improved as a result of the medication. (*Id.*)  The ALJ commented that this seemed in accord with Dr. Mills' assessment that Plaintiff's interpersonal skills were impaired.  (*Id.*)  When the ALJ asked Plaintiff whether his PTSD disrupted his ability to function, Plaintiff responded affirmatively and stated, "I have what I call episodes of the situations where I'll kind of shut down, not know where I am, just really close

down." (*Id.*)  Additionally, Plaintiff testified that he feels anxious, his mood changes frequently, he has trouble concentrating after he has been interrupted, he thinks about suicide regularly, and he is able to read people's minds.  (*Id.* at 12-13.)

Dr. Bolter testified that in his opinion, Plaintiff could perform complex tasks, but would have to be "in a very restrictive environment" that was "docile," nonpublic, and that provided "minimal contact with peers and supervisors."  (*Id.* at 13.)  When the ALJ asked if Plaintiff would be able to sustain work, Dr. Bolter stated, "I'm not really sure. . . . [T]here would be difficulties if people 'cross him' but again, if he's in a proper environment that's not going to happen very often.  It's hard to compare with the jobs he's had."  (*Id.*)  Dr. Bolter disagreed with Dr. Mills' assignment of a GAF score of 35 to Plaintiff because all of the other assessments assigned Plaintiff a score of at least 55.  (*Id.* at 13-14.)

VE Bonnie Sinclair testified that under the limitations assessed by Dr. Hurwitz, Dr. Hicks, and Dr. Soliman, Plaintiff could perform his prior work as a warehouseman or custodian.  (*Id.* at 14.)  The VE testified that under the limitations assessed by Dr. Mills, Plaintiff would be unable to work.  (*Id.*)  The VE testified that under the limitations assessed by Dr. Bolter, which the ALJ defined as "non-public, minimal contact with peers and supervisors, no cognitive restrictions, can sustain work," Plaintiff could perform work as a custodian, but not as a warehouseman.  (*Id.*)  Finally, the VE concluded that Plaintiff could not work under his own professed limitations because he testified that he could not sustain full-time work.  (*Id.*)

On August 6, 2005, the ALJ issued a written decision finding that Plaintiff was not disabled because he could perform his past relevant work as a custodian.  (Administrative Record ("AR") at 18-19.)  The ALJ summarized the medical opinions submitted and stated that he called upon medical expert witness Dr. Bolter to "resolve the discrepancies in the medical opinion."  (AR at 16.)  The ALJ summarized Dr. Bolter's conclusions as follows:

> [Dr. Bolter] stated that Dr. Mills' reported global assessment of functioning of 35 was simply unsupported by ongoing progress records or other examinations, noting that a patient with such impaired functioning would be expected to be hospitalized. . . . [H]e estimated that a global assessment of functioning of 55 or 60 would be a more accurate reflection of the clinical findings in the record.  He stated that there was no evidence of cognitive defect.  However, he stated that the claimant's psychiatric pathology had resulted in moderate restriction of activities of daily living, and marked difficulties maintaining social functioning.  Dr. Bolter also stated that one to two

6

episodes of decompensation in a work-like setting were documented.  He was of the opinion that the claimant remained able to maintain attention and concentration for extended periods, but would be precluded from jobs requiring public contact, or more than minimal interaction with coworkers and supervisors.

(AR at 16.)  The ALJ found Dr. Bolter's assessment persuasive, and the ALJ concluded that Plaintiff could perform simple to complex tasks in a nonpublic setting with minimal peer and supervisory contact.  (AR at 17.)

The ALJ then summarized the VE's testimony, including the VE's finding that Plaintiff would be able to perform the duties of his past work as a custodian.  (*Id.*)  The ALJ found the VE's testimony persuasive and concluded that Plaintiff was not disabled because he could return to his past work as a custodian.  (*Id.*)

The ALJ provided several "clear and convincing reasons" for rejecting Plaintiff's subjective allegations of limitation.  (*Id.*)  First, the ALJ found that the evidence failed to establish a limitation which would preclude sustained, entry level work.  (*Id.*)  The ALJ noted that while Plaintiff had difficulty interacting with other people, there was no evidence that Plaintiff's alleged impairments would preclude work with minimal interpersonal interaction.  (*Id.*)  Second, the ALJ found that Plaintiff's allegations of significant limitation were unsupported, because Plaintiff was able to use public transportation, attend daily AA/NA meetings, and had passed tests of high intellect for MENSA.  (*Id.*)  Third, the ALJ found that Plaintiff's medications had not imposed disabling side effects.  (*Id.*)  Fourth, the ALJ found no evidence of any eating disorder.  (*Id.* at 18)  Fifth, the ALJ found that Plaintiff's activities of daily living, such as attending school, shopping, and using public transportation, were inconsistent with the presence of significant limitations.  (*Id.*)  Finally, the ALJ found that "there is no statement by a physician . . . with respect to significant subjective limitations."  (*Id.*)  As a result, the ALJ found that Plaintiff's allegations of disabling subjective limitations were not credible.  (*Id.*)

### *Legal Standard*

The district court's duties in connection with a magistrate judge's R&R are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ. P. 72(b); 28

1    U.S.C. § 636(b)(1) (2005).  The district court must make a de novo decision with regard to any

2    part of the R&R to which a party objects.  *See United States v. Raddatz,* 447 U.S. 667, 675

3    (1980).  The district court judge may "accept, reject or modify, in whole or part, the findings or

4    recommendations made by the magistrate."  28 U.S.C. § 636(b)(1).

5          When no objections are filed, the Court may assume the correctness of the Magistrate

6    Judge's findings of fact and decide the motion on the applicable law.  *See Campbell v. U.S. Dist.*

7    *Ct.*, 501 F.2d 196, 206 (9th Cir. 1974).  Under such circumstances, the Ninth Circuit has held

8    that "a failure to file objections only relieves the trial court of its burden to give *de novo* review

9    to factual findings; conclusions of law must still be reviewed *de novo.*"  *Barilla v. Ervin*, 886

10   F.2d 1514, 1518 (9th Cir. 1989) (citation omitted), *overruled on other grounds by Simpson v.*

11   *Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir. 1996).

12                                     *Discussion*

13         To date, neither party has filed objections to the R&R.  The Court thus may assume the

14   correctness of the Magistrate Judge's findings of fact and decide the motion on the applicable

15   law.  *See Campbell*, 501 F.2d at 206.  The Court reviews the Magistrate Judge's conclusions of

16   law *de novo*.  *See Barilla*, 886 F.2d at 1518.  The Magistrate Judge granted Plaintiff's Motion for

17   Summary Judgment because: (1) the ALJ failed to provide clear and convincing or specific and

18   legitimate reasons for rejecting the opinion of Plaintiff's treating physician and erred in relying

19   solely on the medical expert's testimony; (2) the ALJ failed to discuss competent lay witness

20   testimony; and (3) the ALJ did not properly rate the degree of Plaintiff's mental function

21   limitations.  (R&R at 21, 27, 32.)  However, the Magistrate Judge rejected Plaintiff's claim that

22   his due process rights had been violated.  (R&R at 35.)  For the reasons set forth below, the

23   Court **ADOPTS** the R&R and **GRANTS** Plaintiff's Motion for Summary Judgment.

24   **I. The ALJ's Rejection of the Opinion of Plaintiff's Treating Physician**

25         Plaintiff asserts that the ALJ committed error when he failed to provide specific and

26   legitimate reasons supported by substantial evidence in the record for rejecting the opinion of

27   Dr. Mills, Plaintiff's treating physician.  (Mot. at 15.)  In opposition, Defendant argues that Dr.

28   Mills' opinion was not supported by other medical sources in the record, and that the ALJ

1   properly relied on the opinion of medical expert Dr. Bolter as well as other evidence in the

2   record.  (Opp'n to Mot. at 8.)

3        The weight given to medical opinions depends on whether they are proffered by a

4   treating, examining, or non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

5   1995).  Ordinarily, the most weight is given to the opinion of a treating physician, who has a

6   greater opportunity to know and observe the patient than other physicians.  *Id.*; *Smolen v.*

7   *Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  In addition to considering the source of a medical

8   opinion, a court must examine whether the opinion is controverted.  *See Tonapetyan v. Halter*,

9   242 F.3d 1144, 1148 (9th Cir. 2001).  An ALJ may reject an uncontroverted opinion of a treating

10   or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.  In

11   comparison, an ALJ may reject a controverted opinion of a treating or examining physician for

12   " 'specific and legitimate reasons' supported by substantial evidence in the record."  *Id.* (citing

13   *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The opinion of a nonexamining

14   physician, without other evidence, is insufficient to reject the opinion of a treating or examining

15   physician.  *Id.* at 831.  However, the ALJ need not give weight to a treating physician's

16   conclusory opinions if they are supported by minimal clinical findings.  *Meanel v. Apfel*, 172

17   F.3d 1111, 1113 (9th Cir. 1999).

18        The Court first examines whether the opinion of Dr. Mills, the treating physician, was

19   controverted by other evidence in the record.  The ALJ did not expressly state that Dr. Mills'

20   opinion was controverted, but his report does state that a medical expert was called as a witness

21   "to resolve the discrepancies in the medical opinion."  (AR at 16.)  An independent examination

22   of the record reveals that Dr. Mills' opinion was controverted as to the GAF score she assigned

23   Plaintiff, as well as the type of work Plaintiff would be able to perform.  Dr. Mills assigned

24   Plaintiff a GAF score of 35, and she opined that he would have difficulty working at a regular

25   job on a sustained basis.  (*Id.* at 294, 296.)  Dr. Hicks, an examining physician, assigned Plaintiff

26   a GAF score of 75 or 80, and he opined that Plaintiff could, at a minimum, perform simple and

27   repetitive tasks but would have difficulty taking instructions from supervisors.  (*Id.* at 192.)  Two

28   nonexamining physicians opined that Plaintiff could perform simple, repetitive tasks for a

1   normal workday and work week.  (*Id.* at 196, 212.)  At Plaintiff's hearing, medical expert Dr.

2   Bolter testified that Dr. Mills' reported GAF of 35 was unsupported by Plaintiff's progress

3   records and other examinations.  (*Id.* at 329-30.)  Dr. Bolter also opined that Plaintiff could

4   perform complex tasks, but he would have to be in a restrictive environment in which he had

5   minimal contact with peers and supervisors.  (*Id.* at 328-29.)  Because there was a conflict in

6   medical opinions as to Plaintiff's GAF score and the type of work he could perform, the ALJ

7   was required to state " 'specific and legitimate reasons' supported by substantial evidence in the

8   record" for rejecting Dr. Mills' opinion.  *See Lester*, 81 F.3d at 830.

9           The Court agrees with the R&R and finds that the ALJ failed to provide any reasons for

10  discrediting Dr. Mills' opinion.  (*See* R&R at 23.)  The ALJ's report does not discuss or discredit

11  Dr. Mills' opinion, other than to briefly describe her assessment of Plaintiff's impairment and to

12  note that Dr. Bolter disagreed with the GAF score she assigned to Plaintiff.  Although the ALJ

13  did provide reasons supporting his conclusion that Plaintiff was only mildly to moderately

14  impaired, the Ninth Circuit requires a specific discussion of the ALJ's reasons for rejecting a

15  treating physician's conclusions.  *See Lester*, 81 F.3d at 830.  The ALJ did not accept Dr. Mills'

16  assessment of the degree of Plaintiff's impairment and failed to provide specific reasons for

17  differing from Dr. Mills' assessment.  While an ALJ need not give weight to a treating

18  physician's conclusory opinions if they are unsupported by clinical findings, the Court agrees

19  with the R&R and finds that Dr. Mills' opinion was not conclusory, and her opinion was

20  supported by her treatment notes and observations in Plaintiff's medical records.  (*See* R&R at

21  23; AR at 231, 243, 258, 294-97.)  Defendant argues that the ALJ properly rejected Dr. Mills'

22  opinion in favor of Dr. Bolter's opinion because Dr. Bolter's opinion was supported by

23  substantial evidence in the record, including the findings of the examining physician, Dr. Hicks.

24  (Opp'n at 8.)  However, the Ninth Circuit has consistently held that where the ALJ disregards a

25  treating physician's opinion without giving an explanation, the ALJ commits legal error, and the

26  decision must be reversed or remanded.  *See, e.g., Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th

27  Cir. 1996) (holding that ALJ committed legal error when he failed to provide specific, legitimate

28  reasons for rejecting the opinion of examining psychologist); *Smolen*, 80 F.3d at 1286 (holding

1   that ALJ committed legal error when he failed to provide specific, legitimate reasons for

2   disregarding the conclusions of treating physician); *Ghokassian v. Shalala*, 41 F.3d 1300, 1304

3   (1994) (same).  Accordingly, the Court **FINDS** that the ALJ committed legal error when he

4   failed to state specific and legitimate reasons for rejecting Dr. Mills' opinion.

5   **II. The ALJ's Failure to Address Lay Witness Testimony**

6         Plaintiff argues that the ALJ erred by failing to address the lay witness testimony of

7   Plaintiff's friend, James Nichols.  (Mot. at 14-15.)  Defendant argues that the ALJ properly

8   discounted Mr. Nichols' testimony because it conflicted with the available medical evidence,

9   Mr. Nichols saw Plaintiff only six to eight hours a week, and Mr. Nichols' testimony was

10  cumulative with Plaintiff's testimony.  (Opp'n at 7.)

11        "In determining whether a claimant is disabled, an ALJ must consider lay witness

12  testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th

13  Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see also* 20 C.F.R. §§

14  404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Lay testimony as to how an impairment affects a

15  claimant's ability to work is competent evidence and cannot be disregarded without comment.

16  *Stout*, 454 F.3d at 1053 (citing *Nguyen*, 100 F.3d at 1467).  As a result, "[i]f the ALJ wishes to

17  discount the testimony of lay witnesses, he must give reasons that are germane to each witness."

18  *Id.* (citing *Dodrill*, 12 F.3d at 919).

19        The Court agrees with the R&R and finds that the ALJ was required to address Mr.

20  Nichols' testimony.  (*See* R&R at 32.)  Consistent with medical evidence, Mr. Nichols

21  commented upon Plaintiff's inability to work with others.  (*Id.* at 28-29.)  He wrote that Plaintiff

22  takes instructions "as a personal threat" and "will do something different."  (*Id.* at 29.)  He

23  reported that Plaintiff "is easily hurt by others–feels that other people have wronged him–don't

24  care or have deceived him–has trouble listening to other people's point of view–thinks everyone

25  else is crazy but himself."  (*Id.*)  Mr. Nichols further reported that Plaintiff had "unreasonable

26  ideas & demands on others–to the point of not making sense."  (*Id.*)  As noted in the R&R, Mr.

27  Nichols' statements are highly relevant to Plaintiff's ability to take instructions from supervisors

28

1   and to interact with other employees.  (*See* R&R at 29.)  Thus, the ALJ was required to set forth

2   specific reasons for disregarding the statements.  *See Nguyen*, 100 F.3d at 1467.

3          Defendant cites *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984), for the proposition

4   that an ALJ is permitted to discount lay witness testimony that conflicts with medical evidence.

5   (Opp'n at 6.)  However, as pointed out by the Ninth Circuit in *Nguyen*, the lay witnesses in

6   *Vincent* made medical diagnoses, which "are beyond the competence of lay witnesses and

7   therefore do not constitute competent evidence."  *See Nguyen*, 100 F.3d at 1467.  In contrast,

8   "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work

9   *is* competent evidence."  *Id.*  Mr. Nichols' testimony regarding Plaintiff's difficulties in

10  interacting with others is competent evidence because it describes how Plaintiff's impairment

11  affects his ability to work.  It does not remotely resemble a medical diagnosis.

12         Defendant also asserts that the ALJ was not required to discuss Mr. Nichols' testimony

13  because it was cumulative with Plaintiff's testimony.  (Opp'n at 7.)  However, an ALJ is not

14  permitted to disregard lay witness testimony simply because it overlaps with the testimony of the

15  claimant or other witnesses.  *See Robbins v. SSA*, 466 F.3d 880, 885 (9th Cir. 2006)  In fact, the

16  Ninth Circuit recently held that an ALJ erred in failing to address the lay witness testimony of a

17  plaintiff's son because the testimony added "substantial weight" to the plaintiff's claim.  *See id.*

18  Accordingly, the ALJ in the instant case was required to address Mr. Nichols' statements

19  because they corroborated Plaintiff's claim that he was unable to sustain work.

20         Finally, Defendant argues that the ALJ was not required to account for Mr. Nichols'

21  testimony because "[he] only sees Plaintiff six to eight hours a week."  (Opp'n at 6.)  Defendant

22  cites *Dodrill*, 12 F.3d at 919, for the proposition that lay testimony is particularly valuable when

23  it comes from individuals who observe the claimant on a daily basis.  (Opp'n at 6.)  However,

24  Defendant fails to mention that the *Dodrill* panel also found that "the testimony of those who see

25  the claimant less often still carries some weight."  *See Dodrill*, 12 F.3d at 919.  Further, in

26  holding that an ALJ must cite reasons for discounting the testimony of lay witnesses, the panel

27  did not distinguish between individuals who observe the claimant daily and individuals who see

28  the claimant less often.  *See id.*  As a result, Defendant's argument that the ALJ was not required

to address Mr. Nichols' testimony because he did not see Plaintiff on a daily basis is not

supported by relevant case law.  In sum, the Court concurs with the R&R and **FINDS** that the

ALJ's failure to address Mr. Nichols' lay witness testimony constituted legal error.  (*See* R&R at

32.)

### III. The ALJ's Rating of the Degree of Plaintiff's Mental Functional Limitations

Plaintiff argues that the ALJ failed to make specific findings as to his degree of functional

limitations in the four areas listed in the Social Security regulations.  (Mot. at 9-11.)  In

response, Defendant argues that medical expert Dr. Bolter assessed Plaintiff's limitations in the

four areas, and the ALJ properly incorporated Dr. Bolter's assessment into his decision.  (Opp'n

at 5.)

Social Security regulations require the ALJ to follow a "special technique" for evaluating

severity of mental impairments and to "document application of the technique in the decision."

*See* 20 C.F.R. § 404.1520a.  The ALJ's decision must "include a specific finding as to the degree

of limitation in each of the functional areas described" in the regulation.  20 C.F.R. §

404.1520a(e)(2).  Specifically, the ALJ is required to make separate evaluations of how the

claimant's mental impairment impacts four functional areas: "activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. §

404.1520a(c)(3-4).  The ALJ must rate the claimant's functional limitation in three of the areas

(daily activities, social functioning, and concentration, persistence, or pace) as being none, mild,

moderate, marked, or extreme.  *Id.*  The ALJ must state the number of episodes of

decompensation as being none, one or two, three, or four or more.  *Id.*  One of the stated

purposes for the "special technique" is to help the Social Security Administration "[o]rganize

and present [its] findings in a clear, concise, and consistent manner."  20 C.F.R. §

404.1520a(a)(3).

The Court agrees with the R&R and finds that the ALJ's decision in this case does not

include specific findings regarding the four functional areas described in Section 1520a.  (*See*

R&R at 32.)  The ALJ's decision does describe the ratings that treating physician Dr. Mills and

medical expert Dr. Bolter assigned to each of the four functional areas.  (*See* AR at 15-16.)  Yet

1    the decision does not satisfy the requirements of Section 1520a because the ALJ failed to

2    provide his own "specific finding" as to the degree of limitation in each of the functional areas.

3    *See* 20 C.F.R. § 404.1520a(e)(2).  Defendant argues that the ALJ satisfied the requirements of

4    Section 1520a by incorporating Dr. Bolter's assessment of the four areas in the decision.

5    However, nowhere in the decision does the ALJ indicate that he adopted Dr. Bolter's ratings

6    regarding each of the four areas.  Further, the plain language of Section 1520 states that the

7    ALJ's decision "must include a specific finding as to the degree of limitation in each of the

8    functional areas."  *See* 20 C.F.R. § 404.1520a(e)(2).  The regulation on its face does not suggest

9    that an ALJ can satisfy the requirement of making a specific finding in each of the four areas

10    simply by repeating the findings that a medical expert made in each of the areas.  At the least,

11    the ALJ must state whether he is adopting the medical expert's findings in each of the areas, and

12    the reasons why he is adopting the expert's findings.  In order to fulfill Section 1520's purpose

13    of presenting findings "in a clear, concise, and consistent manner," the ALJ was required to

14    follow the regulation's specific documentation requirements.  *See* 20 C.F.R. § 404.1520a(a)(3).

15    Accordingly, the Court **FINDS** that the ALJ committed legal error by failing to include specific

16    findings regarding the four functional areas described in Section 1520a.

17    **IV. Plaintiff's Due Process Argument**

18         Plaintiff argues that his right to due process was violated because one ALJ (ALJ

19    Steinman) conducted Plaintiff's hearing while another ALJ (ALJ Carletti) issued the decision.

20    (Mot. at 12.)  ALJ Edward Steinman, who conducted Plaintiff's hearing, did not sign the

21    decision in Plaintiff's case.  (Mot. at 12.)  Rather, ALJ Carletti signed the opinion "for" ALJ

22    Steinman.  (*Id.*)  Defendant argues that no due process violation occurred because there is no

23    evidence that ALJ Steinman did not prepare the opinion.  (Opp'n at 6.)

24         The Court agrees with the R&R and finds that Plaintiff has failed to present any evidence

25    showing that ALJ Steinman did not draft the decision signed "for" him by ALJ Carletti.  (*See*

26    R&R at 35.)  As Defendant points out, Plaintiff's assertion that ALJ Carletti made findings and

27    issued the decision is speculative.  (Opp'n at 6.)  Because the decision bears the typed name of

28    ALJ Steinman, the record suggests that ALJ Steinman issued the decision and ALJ Carletti

1    signed the decision as a proxy for ALJ Steinman.  (*See* AR 11, 19.)  Accordingly, the Court

2    **FINDS** that ALJ Steinman's actions did not rise to the level of a due process violation.

3    **V. Proceedings on Remand**

4         Plaintiff argues that the Court can now find him disabled because the question of his

5    mental health disability is fully developed, and a remand would only delay his receipt of

6    benefits.  (Mot. at 20.)  Defendant argues that the ALJ did not err in his evaluation of Plaintiff's

7    claim, and even if there was an error in the ALJ's analysis, the proper remedy would be to

8    remand the case to more fully develop the record.  (Opp'n at 9.)

9         Generally, when a court reverses an administrative determination, "the proper course,

10   except in rare circumstances, is to remand to the agency for additional investigation or

11   explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*,

12   537 U.S. 12, 16 (2002)).  However, "where the record has been developed fully and further

13   administrative proceedings would serve no useful purpose, the district court should remand for

14   an immediate award of benefits."  *Id.* at 593.  The Ninth Circuit has instructed that a district

15   court should credit evidence that was rejected during the administrative process and remand for

16   an immediate award of benefits if "(1) the ALJ failed to provide legally sufficient reasons for

17   rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

18   determination of disability can be made; and (3) it is clear from the record that the ALJ would be

19   required to find the claimant disabled were such evidence credited."  *Id.*

20        The Court agrees with the R&R and finds that this case should be remanded for further

21   administrative proceedings.  (*See* R&R at 34.)  As discussed above, the ALJ failed to address

22   and credit (or discredit) the opinions of treating physician Dr. Mills and lay witness James

23   Nichols.  Further, the ALJ failed to make specific findings as to Plaintiff's degree of functional

24   limitations in the four areas listed in the Social Security regulations.  Because the record has not

25   been fully developed as to these issues, the Court cannot remand for an immediate award of

26   benefits.  The credibility of Dr. Mills' and Mr. Nichols' opinions and the degree of Plaintiff's

27   functional limitations must be resolved before a determination of disability can be made.  Even if

28   Dr. Mills' and Mr. Nichols' opinions are credited as true, it is not clear from the record whether

the ALJ would be required to find Plaintiff disabled.  The Court thus **REMANDS** this case for further review.

***Conclusion***

For the reasons stated above, the Court **ADOPTS** the R&R.  The Court **DENIES** Defendant's Cross-Motion for Summary Judgment. [Doc. No. 14.] The Court **GRANTS** Plaintiff's Motion for Summary Judgment. [Doc. No. 11.] The Court **REMANDS** this case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATED:  January 30, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:    Magistrate Judge Major
       All Parties